UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JTO, INC.,** | ) | **CASE NO.1:16CV648** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **THE TRAVELERS INDEMNITY** | ) | **OPINION AND ORDER** |
| **COMPANY OF AMERICA,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant The Travelers Indemnity Company of America's Motion for Judgment on the Pleadings (ECF # 8). For the following reasons, the Court grants Travelers' Motion and dismisses the case.

Plaintiff JTO, Inc. is an Ohio based construction company. The Travelers Indemnity Company ("Travelers") is an insurance company incorporated under the laws of the State of Connecticut. According to JTO's Complaint, JTO and the City of Willoughby, Ohio entered into a contract for two road projects, the Riverside Common Drive and the Apollo Parkway Extension Projects in December of 2002. JTO obtained insurance coverage under two Commercial General Liability policies from Travelers. From February 1, 2002 through

February 1, 2003, policy DT CO 251X6024-TIA-02 was in effect and from February 1, 2003 through February 1, 20014, policy # DT CO 251X6024-TIA-03 was in effect.  Both policies expressly provided insurance coverage for the Riverside and Apollo projects.

Construction work began on the two road projects in 2003.  In December of 2004, the United States Army Corps of Engineers issued a Cease and Desist Order stopping all construction on the projects.  In 2011, the United States and State of Ohio Environmental Protection Agencies filed suit against JTO and others for alleged violations of the Clean Water Act under both federal and state law.   According to the suit, both the Riverside and Apollo road projects were located on protected wetlands.

JTO promptly gave notice to Travelers of the suit and sought defense and indemnity coverage under the policies.  Travelers twice denied coverage.  JTO alleges Breach of Contract and seeks Declaratory Judgment that it is entitled to defense and indemnity coverage under the policies.

Travelers moves for Judgment on the Pleadings on all JTO's claims.  According to Travelers, it has no duty to defend nor indemnify JTO under the policies because there was no accident or fortuitous event, consequently, there was no "occurrence" to trigger coverage. Rather, the claims by the EPAs against JTO stem from JTO's affirmative conduct and decisions, including JTO's failure to obtain the required permits before beginning construction and its decision to discharge dredged and fill material into the waterways. Travelers further argues that the EPAs have not made any claims against JTO for compensatory damages but seek only statutory penalties and Injunctive relief, therefore, JTO cannot show there was damage to property in order to trigger coverage.  Lastly, Travelers

contends the absolute pollution exclusion in the policies forecloses any duty to defend or indemnify.

JTO contends environmental damage constitutes property damage under the law and under the allegations in its Complaint, which the Court must construe as true. Furthermore, JTO argues that whether there was an "occurrence" under the policy involves questions of intent to cause an injury, which is a fact question unsuited for resolution on a Motion for Judgment on the Pleadings. Lastly, JTO argues the pollution exclusion does not apply because dredged and fill material do not meet the policy definition of "pollutant."

## **LAW AND ANALYSIS**

### **Standard of Review**

After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed.R.C.iv.P. 12(c). In this jurisdiction, "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) . . . . We 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 389 (6th Cir.2007) (citations omitted). The court's decision "rests primarily upon the allegations of the complaint;" however, "'exhibits attached to the complaint[] also may be taken into account.'" *Barany-Snyder v Weiner,* 539 F.3d 327, 332 (6th Cir.2008) (citation omitted) (brackets in the original). Lastly, a Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of

law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991). In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for

4

relief." *Weisbarth*, 499 F.3d at 542. A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### Declaratory Judgment

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Nevertheless, the Supreme Court has reiterated the discretionary nature of the Act. In *Public Affairs Press v. Rickover*, 369 U.S. 111, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962), the highest court opined: "'The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.' *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 499 [62 S.Ct. 1173, 1177-78, 86 L.Ed. 1620 (1942)]." Put another way, the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64 at 72 (1985).

As an initial matter, the parties do not dispute that Ohio law governs the interpretation of the relevant contracts for insurance. The policies were written for JTO, an Ohio company, and insured work projects on property located in Ohio. Therefore, the Court will apply Ohio law.

### Occurrence Under the Policies

The parties dispute whether the Court must consider the allegations in Plaintiff's Complaint or the allegations in the underlying government suits against JTO in order to

determine the duty to defend or indemnify. Ohio law clearly holds it is the allegations as set forth in the complaint against the insured that determines the scope of the insurer's duties. *Ohio Gov't. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 246 (2007). "The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." *Id.*

In the suits filed by the United States and the State of Ohio against JTO the government plaintiffs allege that JTO discharged pollutants into the waters of the United Sates in the Cities of Willoughby, Ohio and Mentor, Ohio without authorization by the United States Department of the Army and in violation of the Clean Water Act. (U.S. Complaint at 1). More specifically they allege that JTO constructed roads and sewers at the Riverside commons site from August 2001 through December 2004 and "discharged dredged or fill material from point sources into the waters of the United States without a permit..." (Id. at 39).

The State of Ohio's Complaint reads in pertinent part: "Upon information and belief, in 2004, JTO and other contractors and/or subcontractors acting on behalf of the Non-State defendants continued to discharge dredged and fill material into the wetlands and tributary to the Chagrin River for the purpose of constructing Riverside Commons drive, Apollo Parkway Extension, storm sewers and oil and gas access roads." (Ohio Complaint at 42). The Complaints seek injunctive relief and statutory damages.

Under the relevant insurance policies, JTO was insured for "property damage"

caused by an "occurrence." "Property damage" is defined in the policies as

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

According to JTO, it is a factual issue whether its dredging and filling of wetlands was an occurrence under the policies because JTO contends the resulting contamination was accidental, therefore, judgment on the pleadings is inappropriate because the Court must construe all factual allegations in JTO's Complaint as true.

The term "accident" is not defined in the policy. When a term in an insurance contract is not defined, Ohio law requires the court apply the term's ordinary meaning. See *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.,* 990 F.2d 865, 872 (6th Cir. 1993).

> Under Ohio law, where, as in this case, a term in an insurance contract is not defined, it is to be given its ordinary meaning: The law in this state is well-established with respect to the interpretation of insurance contracts. A court has an obligation to give plain language its ordinary meaning...."

quoting *Miller v. Marrocco,* 28 Ohio St.3d 438 (1986);

Under Ohio law, "accident" is defined as "unintended and unexpected happenings." *Owens-Illinois,* at 872 citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co.,* 64 Ohio St. 3d 657 (1992) ( "Ohio courts have consistently described the ordinary meaning of "accident" to refer to unintended and unexpected happenings.")

Under Ohio law, courts must apply the following canons of construction:

> An insurance policy is a contract, and a court's construction of any contract is a matter of law. When the intent of the parties is evident from the clear and unambiguous language in the agreement, a court must enforce the contract as written and give the words their plain and ordinary meaning. But if the language in the policy is ambiguous, the contract must be construed strictly against the insurer.
>
> Where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof. [I]f a policy does not plainly exclude a claim from coverage, then an insured may infer that the claim will be covered.

*Southside River Rail Terminal v. Crum & Forster Underwriters of Ohio*, 157 Ohio App. 3d 325, 331, (Ohio App. 3rd Dist. 2004). (Internal citations omitted).

Whether JTO's acts were accidental or intentional will determine whether there was an occurrence under the policy triggering coverage. The Sixth Circuit has held that whether an insured acts were expected or intended are issues of fact. *Lumbermens Mut. Cas. Co. v. S W Indus., Inc.,* 39 F.3d 1324, 1330 (6th Cir. 1994) (" We hold, instead, that the question of whether S–W "expected or intended" Viock's injuries is a question of fact."). Both the act and subsequent injury must have been expected or intended in order to exclude coverage under the applicable policies. Therefore, we hold that in order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended. It is not sufficient to show merely that the act was intentional." *Physicians Ins. Co. of Ohio v. Swanson*, 58 Ohio St. 3d 189, 193 (1991).

Whether JTO's discharge of dredged and fill material into protected waters without a permit was an "occurrence"is a factual issue and the Court cannot hold as a matter of law that the JTO's actions "are clearly and indisputably outside the contracted coverage." Therefore, the Court denies Travelers' Motion for Judgment on the Pleadings seeking a holding from the

Court that JTO's actions were not an occurrence under the policies.

**Property Damage**

Travelers also contends it owes no duty to defend or indemnify JTO because the underlying government complaints do not seek compensatory damages but instead seek only injunctive relief and statutory penalties. In the absence of a claim for property damage, the policies do not provide coverage for JTO's acts as alleged in the underlying Complaints.

A review of the underlying Complaints clearly indicate they seek statutory penalties and injunctive relief for the damage to protected wetlands. Paragraph 2 of United States Complaint seeks injunctive relief to restore and/or mitigate the damages caused by their unlawful activities." At paragraph 45 of its Complaint, the United States alleges Defendants, including JTO, caused the filling of 69.5 acres of wetlands and 3,800 linear feet of waters of the United States adversely impacting additional acreage. Lastly, in its prayer for relief the United States seeks an order requiring JTO and the other Defendants to restore the damaged properties and mitigate the irreversible environmental damage done to the wetlands.

As Ohio courts have held, pollution constitutes property damage under similar insurance policy language. See *Kipin Indus., Inc. v. Am. Universal Ins. Co.,* 41 Ohio App. 3d 228, 230–31, 535 N.E.2d 334, 337 (1987) ("Construing the policy in favor of the insured in accordance with established principles of insurance law that require an interpretation favoring the insured, we hold that "property" includes the interests of the federal and the state governments in the tangible environment and its safety. Thus, when the environment has been adversely affected by pollution to the extent of requiring governmental action or expenditure or both for the safety of the public, there is "property damage" whether or not the pollution

affects any tangible property owned or possessed exclusively by the government.") See also *Morton Internatl., Inc. v. Harbor Ins. Co.,* 79 Ohio App. 3d 183, 191, 607 N.E.2d 28, 33 (1992) ("environmental damage alleged in the Summit claims constituted 'Property Damage.'").

Where as here, both the government Complaints describe environmental injury to wetlands, JTO has arguably presented a claim for property damage under the Travelers' policies sufficient to trigger coverage.

**Pollution Exclusion**

Our inquiry does not end here as the applicable policies contain coverage exclusions arising from the insured's polluting activities. Among its exclusions, the Travelers' policies exclude coverage for:

> e. Pollution
>
> (2) Any loss, cost or expense arising out of any:
>
> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants;" or
>
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."
>
> Pollutant is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

JTO claims it is entitled to coverage because its dredging and filling operations did not involve pollutants as defined under the policies. JTO relies in part on the Ohio Supreme

Court case of *Andersen v. Highland House Co.*, 93 Ohio St.3d 547 (2001), wherein the Ohio Supreme Court held that carbon monoxide emitted from a malfunctioning residential heater was not a pollutant under the insured's CGL policy pollution exclusion because it was not expressly enumerated under the policy as a pollutant.  In *Andersen*, the relevant pollution exclusion mirrors the language of the pollution exclusion before this Court.  In reaching its conclusion, the Ohio Supreme Court looked to the purpose behind the pollution exclusion, finding that the absolute pollution exclusion was intended to "bar coverage for gradual environmental degradation of any type and to preclude coverage responsibility for government-mandated cleanup[s]."  *Id* at 550.

The Court further considered the intent of the parties, finding that as commercial and residential property managers and owners defendants were greatly concerned with deaths or injuries resulting from carbon monoxide poisoning and considered themselves protected under the policies and it was reasonable for them to believe they had coverage for premises hazards.  Finally, the Court considered whether there were ambiguities in the policy language. The Court held that the appropriate test to determine the intent of the language is to consider what the insurer reasonably believed the ordinary reader understood the words to mean.  *Id* at 551.  In finding for the insured, the Ohio Supreme Court cited with approval a Tenth Circuit decision, *Regional Bank of Colorado N.A. v. St. Paul Fire & Marine Ins.,* 35 F.3d 494,498 (10th Cir. 1994), wherein the court held "while a reasonable person of ordinary intelligence might well understand that carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as 'pollution."   The Ohio

Supreme Court cited with approval a New Jersey superior court holding that "We would be remiss if we were to simply look to the bare words of the exclusion, ignore its raison d'etre, and apply it to situations which do not remotely resemble traditional environmental contamination." *Andersen* at 552.

The Court finds *Andersen* is distinguishable from the facts at bar and further finds the absolute pollution exclusion applies. First, there is no credible dispute that the underlying governmental Complaints against JTO are Complaints of "traditional environmental contamination." The Complaints allege that over the course of several years JTO dredged and filled protected wetlands without a permit to do so. Both the Clean Water Act and the comparable Ohio statute define dredge and fill as pollutants. See 33 U.S.C.A. § 1362(6) ("The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."). Section 1362(19) further defines "pollution" as "the man-made or man-induced alteration of the chemical, physical, biological, and radiological integrity of water."

Ohio Revised Code Section 6111.01 defines pollution as

(A) "Pollution" means the placing of any sewage, sludge, sludge materials, industrial waste, or other wastes in any waters of the state.

(B) "Sewage" means any liquid waste containing sludge, sludge materials, or animal or vegetable matter in suspension or solution, and may include household wastes as commonly discharged from residences and from commercial, institutional, or similar facilities.

(C) "Industrial waste" means any liquid, gaseous, or solid waste substance resulting from any process of industry, manufacture, trade, or business, or from the development, processing, or recovery of any natural resource, together with such sewage as is present.

(D) "Other wastes" means garbage, refuse, decayed wood, sawdust, shavings, bark, and other wood debris, lime, sand, ashes, offal, night soil, oil, tar, coal dust, dredged or fill material, or silt, other substances that are not sewage, sludge, sludge materials, or industrial waste, and any other "pollutants" or "toxic pollutants" as defined in the Federal Water Pollution Control Act that are not sewage, sludge, sludge materials, or industrial waste.

The United States Complaint at paragraph 40 alleges JTO and other Defendants dredged and filled protected wetlands and the dredged and fill material discharged into protected waters included "dirt, spoil, rock and sand," all of which are among the definition of pollutants as listed in the Clean Water Act. The Ohio Complaint contains similar allegations which fall squarely within the statutory definition of pollution.

Clearly, the United States' and State of Ohio's Complaints against JTO are exactly the kind of environmental actions that fall within the raison d'etre of the absolute pollution exclusion. Furthermore, Plaintiff cannot plausibly argue that under the definitions of dredge and fill in both the Clean Water Act and Ohio statute that they are anything but "contaminants" under the plain language of the policies. Lastly, the policies clearly exclude coverage for the types of governmental enforcement actions against JTO as alleged in the government Complaints as they are losses, costs or expenses arising out of:

> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants;" or
>
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

Therefore, for the foregoing reasons, the Court finds Travelers is not obligated to defend or indemnify JTO under the absolute pollution exclusions found in its CGL policies

13

with JTO and the Court grants Travelers Motion for Judgment on the Pleadings on all JTO's claims.

    IT IS SO ORDERED.

                                        s/ Christopher A. Boyko
                                        CHRISTOPHER A. BOYKO
                                        United States District Judge

Dated: March 16, 2017